OPINION
On November 10, 1999, the Stark County Grand Jury indicted appellant, Ruben Vance, on one count of domestic violence in violation of R.C. 2919.25. Said charge arose from an incident involving appellant's girlfriend, Deidre Mitchell. A jury trial commenced in the Canton Municipal Court on December 6, 1999. The jury found appellant guilty as charged. By judgment entry filed December 7, 1999, the trial court sentenced appellant to one hundred eighty days in jail. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. APPELLANT'S CONVICTION ON ONE COUNT OF DOMESTIC VIOLENCE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR MISTRIAL.
 I
Appellant claims his conviction was against the manifest weight and sufficiency of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The gravamen of this challenge to the evidence is vested in the victim's recantation of her statements made to the police and at the hospital. The victim's testimony at trial was completely different than her taped interview statements and her prior statements. Canton Police Officer Sean Overdorf, the officer dispatched to the scene, testified the victim told him appellant "had punched her in the face and raped her." T. at 99. Officer Overdorf stated the victim appeared "disoriented" and "kind of out of it." Id. Officer Overdorf observed the victim's "eye was kinda swelled up and her lip was cut open." Id. Kendra Travis, a registered nurse at Mercy Medical Center, testified the victim told her that "she was physically and sexually assaulted by her ex-boyfriend." T. at 113. The victim told Ms. Travis "her ex-boyfriend held her down, punched her in the face and then proceeded to rape her." T. at 115. Canton Police Sergeant Gregory Boudreaux, the investigative officer, testified the victim told him she had been raped. T. at 126. He observed physical marks on the victim that were consistent with someone being assaulted and dragged. T. at 131; Plaintiff's Exhibits 2 and 3 (photographs). Sergeant Boudreaux conducted a taped interview of the victim wherein she described how appellant had raped her, punched her in the eye and hit her in the lip. Plaintiff's Exhibit 1. The victim explained that after appellant had raped her, she came out with a wine bottle to try to make him leave. Thereafter, appellant punched her in the eye and hit her in the lip. Id. At trial, the victim testified she lied to the police and the nurse. T. at 46, 48-49, 54, 57-58. She testified appellant did not hit her and in fact, she hit him with the wine bottle to get him to leave. T. at 40-41, 63, 67. This occurred after the victim and appellant had engaged in sexual intercourse even though she had told him "no". T. at 38-39. On direct, the victim admitted she told Sergeant Boudreaux that appellant "raped me and he dragged me in the room and he punched me in the eye." T. at 43. She qualified the "punch in the eye" by stating it occurred when appellant "was trying to get the bottle out of my hand" that she was beating him with. Id. She explained "[a]fter the sex, I picked up a bottle and I started beating him with it, in his head, in his shoulders, in his chest, and I — on my wall I tried to crack the bottle and I said I wanted this bottle to break so I can jack you in your heart with it. Tried to cut him with it because it just, you know, I just wanted him out of my life." T. at 45. On cross-examination, the victim testified she started hitting appellant with the bottle when he was asleep on the sofa. T. at 61. Contrary to this statement, that appellant was asleep when she began hitting him, is the following testimony of William Baity, a downstairs neighbor: And out of the middle of nowhere I heard some — I heard a huge humongous ruckus. The lady was saying please stop, please stop. You can't do this to me. Please stop. You don't have to do this. Just stop. Stop. And he kept saying that I don't have to do nothing. I'll kill you. I'll kill you. No one leaves me.
* * *
She just screamed. Just — she kept screaming no. Then out of the middle of nowhere I heard a loud scream.* * * I could describe the scream, but she screamed that I'll never forget for life. It's one that I'll never forget.
T. at 84 and 86, respectively.
Mr. Baity recognized the voices as belonging to appellant and the victim. T. at 85. Mr. Baity called the police and had the dispatcher hear the commotion. T. at 86. Mr. Baity then knocked on the victim's door and observed the victim with a bloody face and a "huge mark right across her face like black and blue." T. at 87. Mr. Baity testified appellant was not cut and there was not a mark on him. T. at 89. While watching appellant leave the building, Mr. Baity heard the victim from the balcony repeatedly yell "he raped me, that he brutally raped me, someone call 9-1-1. Somebody help me. Please help me." T. at 91. Richard Mitchell, the victim's ex-husband, testified the victim called him on the day of the incident and told him she was beaten up and raped by appellant. T. at 104. Mr. Mitchell saw the victim that day or the next and observed she "was beat up pretty good." T. at 106. Based upon the photographs depicting the victim's injuries, her spontaneous statements made contemporaneously to the incident, her statements made to medical personnel and the noise and commotion as testified to by the neighbor, we find sufficient evidence to support the conviction, and no manifest miscarriage of justice. Assignment of Error I is denied.
 II
Appellant claims the trial court erred in failing to grant a mistrial. We disagree. The granting of a mistrial lies in the sound discretion of the trial court. State v. Simmons (1989),61 Ohio App.3d 514. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. In his brief at 8, appellant challenges six incidents in the record. First, appellant complains the prosecutor elicited testimony from the victim that appellant had been incarcerated in the past. T. at 76. The trial court sustained appellant's objection and instructed the jury to disregard the testimony. T. at 77. No motion for mistrial was made. Second, appellant complains the victim testified her ex-husband "hates Ruben and he said Ruben's a criminal that belongs in jail." T. at 62. The trial court sustained appellant's objection and instructed the jury to disregard the testimony. Id. No motion for mistrial was made. Third, appellant complains the prosecutor asked appellant's mother, Mamie Perrin, "[d]id you ever testify for Ruben before?" T. at 157. Ms. Perrin responded "no." Id. No objection was made. An error not raised in the trial court must be plain error for an appellate court to reverse. State v. Long (1978), 53 Ohio St.2d 91; Crim.R. 52(B). Fourth, appellant complains the prosecutor asked Ms. Perrin "[y]ou ever lied for your son before?" T. at 158. After Ms. Perrin responded "no," the prosecutor asked "[e]ven if it means he'll go to prison?" Id. Ms. Perrin replied "[e]ven if * * *." Id. The trial court sustained appellant's objection but overruled appellant's motion for mistrial. T. at 159. Fifth, appellant complains in questioning the victim, the prosecutor read part of the victim's taped interview statements made to the police: Q. So if you told Sergeant Boudreaux that well, he [appellant] had run in and out all night long, smoking drugs and having people in my house and the girls just jumped out of my balcony knocking on my door and my window at about six or seven and he left with them and then he come back and I ask him just to leave. * * *
T. at 69.
The trial court overruled a prior objection based on hearsay. T. at 68-69. The victim admitted to making those statements therefore, we find no prejudice. T. at 69-70. Lastly, appellant complains Mr. Baity testified appellant and the victim "had been fighting every other day for almost two months." T. at 95. The trial court sustained appellant's objection but overruled appellant's motion for mistrial. T. at 95-97. Upon review, we find in the first two complaints, the trial court properly handled the objections by sustaining them and instructing the jury to disregard the testimony. Further, in instructing the jury, the trial court specifically told the jury to disregard any statements made wherein an objection had been sustained. T. at 198-199. As to the remaining complaints, we find they were properly handled. The question to Ms. Perrin about lying to keep her son out of jail did not indicate that appellant had a criminal record. Ms. Perrin replied "[e]ven if" implying she would not lie. The other question to Ms. Perrin, the taped interview statements of the victim and the testimony of Mr. Baity were either answered to appellant's benefit or were not objectionable. Mr. Baity's testimony was relevant because his ability to hear what was happening and identify the parties' voices was put in issue by defense counsel on cross-examination. T. at 93-95. We find no prejudice to appellant. Assignment of Error II is denied.
The judgment of the Canton Municipal Court of Stark County, Ohio is hereby affirmed.
 ______________________ Farmer, J.
By Hoffman, P.J. and Edwards, J. concur.